# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK GOMEZ,** | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ASTOUND BROADBAND,** | : | COMPLAINT |
| | : | |
| Defendant**.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |

## COMPLAINT

Plaintiff, Mark Anthony Gomez, by and through his undersigned counsel, The Lacy Employment Law Firm, hereby files this Complaint against Defendant and states as follows:

## PROCEDURAL AND ADMINISTRATIVE REMEDIES

1. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3. On or about July 31, 2024, Plaintiff dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging national origin discrimination, disability discrimination, and retaliation. *See Exhibit 1*, EEOC Charge No. 530-2024-04278.

4. On or about August 29, 2024, Plaintiff filed an amended charge with the EEOC and PHRC adding additional factual allegations and claims. *See Exhibit 2*, Amended EEOC Charge No. 530-2024-04278.

5. The EEOC issued a Right to Sue letter ("Right to Sue") on September 17, 2025, and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued. *See Exhibit 3*.

6. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

7. Plaintiff Mark Anthony Gomez is a Hispanic male who was previously employed as a Direct Sales Representative for Astound Broadband Powered by RCN. He resides at 945 Ramblewood Lane, Bethlehem, PA 18017.

8. Defendant Astound Broadband Powered by RCN ("Defendant"), upon information and belief, is a telecommunications company or broadband service provider with operations at 2124 Avenue C, Bethlehem, PA 18017, with its main office located at 650 College Road East, Suite 3100, Princeton, NJ 08540, and maintains operations in Pennsylvania.

## FACTUAL BACKGROUND

9. Mr. Gomez is a Hispanic male, born on June 17, 1976.

10. Mr. Gomez began his employment with Astound on March 27, 2017, as a Direct Sales Representative, performing sales functions, collecting equipment from customers for commission, and other tasks essential to the direct sales operation.

11. From 2017 through early 2023, Mr. Gomez received positive performance reviews and in January 2023, he was featured in the company's internal newsletter as a top-performing Direct Sales Representative, recognizing his success over 5+ years, work ethic, commitment to customer service, and contributions to the community.

12. Mr. Gomez's direct supervisor was Hieu Nguyen (Sales Manager).

13. In July 2023, Mr. Gomez, in accordance with the company's standard practice picked up approximately 85 pieces of equipment from customers, a task that generates a small commission. While all employees had the opportunity to perform this task, Mr. Gomez observed that Caucasian workers were always compensated without any problems, whereas he faced payment issues.

14. After Mr. Gomez completed the equipment collection task and followed proper procedures, Mauriatta Earls, the Caucasian Director of Customer Operations, instructed Manager Hieu Nguyen not to pay Mr. Gomez. Nguyen marked in a shared spreadsheet that Mr. Gomez "should not be paid out" without providing any explanation, damaging Mr. Gomez's reputation within the company.

15. Manager Nguyen subsequently paid Mr. Gomez only half of what he was owed, without providing a reason for the discrepancy.

16. Throughout November and early December 2023, Mr. Gomez collected equipment from customers for commission. On December 7, 2023, after asking Manager Hieu Nguyen how he preferred the equipment to be returned, Nguyen instructed Mr. Gomez not to bring all of it back at once and instead to drop it off in clear bags in small batches. Mr. Gomez followed these instructions and returned the equipment in two clear bags, placing them neatly in what he understood to be the designated overflow bins at the office, and documented the drop-off with time-stamped photographs.

17. Despite this documentation, the equipment never appeared on the tracking spreadsheet, and Mr. Gomez was never paid. The front desk falsely claimed that Mr. Gomez had caused the equipment to be discarded because he had placed it in a trash bin, though the bin had

no trash signage and was used as an overflow bin by other Direct Sales Representatives, as confirmed by text messages with manager Hieu Nguyen.

18. Photographs taken at the time show no "trash" sign on the red bin where Mr. Gomez placed the equipment. Only after this incident did manager Hieu Nguyen send out an email redefining the red bin as trash, indicating that the company changed the policy retroactively to justify blaming Mr. Gomez.

19. Customers were incorrectly informed via in-person conversations and emails that Mr. Gomez had thrown away their equipment, leading to harassment through texts, emails, and phone calls from customers threatening him and accusing him of theft. Manager Hieu Nguyen advised Mr. Gomez to drop the issue, warning that "higher-ups" influenced by Mauriatta Earls would oppose him.

20. Between December 2023 and January 2024, Mr. Gomez received emails accusing him of mishandling equipment. Customers were later told that the loss of their equipment and any late fees they incurred were the result of Mr. Gomez mishandling and throwing away their equipment. Customers directly contacted Mr. Gomez relaying what they had been told. further damaging his reputation and increasing workplace harassment. This false narrative further damaged Mr. Gomez's reputation and exacerbated the existing workplace harassment.

21. When Mr. Gomez started at Astound Broadband, during his very first ride with manager Luis, Luis explicitly told him that he did not like Black people. Approximately one year after this, at a company potluck, manager Luis mocked a Black Direct Sales Representative with a disability by saying "T-Rex arms" after the employee dropped his utensils.

22. Manager Luis was responsible for assigning eCommerce leads and clearly favored certain individuals, often to the disadvantage of minority coworkers. During a recorded meeting,

Manager Steve Bis openly made jokes about building the wall with Trump, further creating a hostile and racially charged environment.

23. The front office, including Ms. Earls' group, showed ongoing negativity and bias toward minority employees, particularly those in field roles like Mr. Gomez's position.

24. Throughout Mr. Gomez's employment, he and other minority employees observed that non-minority employees were given preferential treatment, including assignments to new builds, large multi-dwelling units (MDUs), and other high-value territories. White employees including received better treatment with respect to territory assignments, lead distribution, and freedom from disciplinary actions.

25. Several employees were treated similarly to Mr. Gomez, receiving similar scrutiny and discipline—all of whom are Black or African American.

26. In one instance during a team meeting, Doug Stackhouse (a senior manager/HR Director) made a racially insensitive comment directed at Hispanic individuals. Mr. Gomez reported this information to his Manager Hieu Nguyen and requested that Stackhouse not be told that Mr. Gomez initiated this complaint. Despite this request for confidentiality, Stackhouse immediately called Mr. Gomez and later apologized at the next company-wide meeting.

27. On or around December 15, 2023, Mr. Gomez raised concerns with Marcy Earls, Barbara Schrade, and Laura Warner, emphasizing that the red bin had always been used as overflow and had no "trash" signage at the time of the incident.

28. Despite Mr. Gomez's explanations and evidence, no correction was made to the false narrative and no commissions were restored.

29. On January 9, 2024, Mr. Gomez filed a formal complaint with Human Resources (Bryan Jung, HR Senior Manager). An "investigation" was conducted, but was biased and

inadequate, focusing on questioning why Mr. Gomez was reaching out to his own customers rather than addressing the false accusations or commission denial.

30. HR told Mr. Gomez to "just be a salesman and do your job," ignoring the fact that he was being defamed and financially harmed. The investigation appeared to focus more on protecting the company than on finding the truth about what happened to the equipment.

31. Following the harassment, false accusations, and denial of commissions, Mr. Gomez suffered a health breakdown and was advised by a doctor to take time off. By the end of January 2024, Defendant had removed Mr. Gomez's access to company servers, preventing him from accessing his email.

32. Mr. Gomez's requests to use vacation and sick leave were denied. Instead of allowing Mr. Gomez to use his accrued paid time off, around January 6, 2024, HR (Bryan Jung) initiated a VOYA/STD/FMLA process over Mr. Gomez's objection, undermining his employment status and isolating him from the workplace.

33. On February 26, 2024, Mr. Gomez was terminated from his employment with Astound Broadband and was presented with a termination letter dated February 22, 2024, citing "job abandonment," stating that Mr. Gomez had not returned to work, following a denied FMLA leave request. Mr. Gomez's physician had cleared him to return to work on February 27, 2024

34. Mr. Gomez could not contest this allegation or provide required documentation because he had been locked out of the company's computer systems and had explicitly objected to the FMLA filing. The stated reason for termination was pretextual, as Mr. Gomez had been constructively forced out through the forced FMLA process and the removal of his system access.

35. At all relevant times, Defendant was aware of Mr. Gomez's race and Hispanic national origin.

36. At all relevant times, Defendant was an employer with more than 15 employees and subject to Title VII, the ADA, 42 U.S.C. § 1981, and the PHRA.

37. Mr. Gomez was qualified to perform the essential functions of his job as evidenced by his approximately seven years of successful performance and recognition as a top performer.

38. As a result of Defendant's unlawful actions, Mr. Gomez has suffered significant economic damages, including lost wages, lost commissions, and loss of employment benefits.

39. Mr. Gomez has also suffered severe emotional distress and has sought treatment from Dr. Christopher L. Mathur, DO (Internal Medicine, St. Luke's University Health Network) and online therapy through BetterHelp.

40. Mr. Gomez expects he may continue to incur medical or therapy expenses related to the emotional distress he experienced, including continued counseling or medication to fully heal.

41. Mr. Gomez has been unable to obtain steady employment since his termination and is currently receiving unemployment benefits.

## COUNT I
### Violations of 42 USC § 1981
*Race Discrimination, Hostile Work Environment, and Retaliation*

42. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

43. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

44. Plaintiff had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

45. Plaintiff was an at-will employee, which implicates his right to make and enforce contracts.

46. Defendant abridged Plaintiff's right to make and enforce contracts by its discriminatory conduct toward Plaintiff.

47. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges and benefits of his employment contract with Defendant.

48. Defendant, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of race and national origin.

49. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

50. Defendant's actions altered Plaintiff's work environment.

51. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasonable person in like circumstances.

52. This severe and pervasive environment continued throughout Plaintiff's employment.

53. Defendant is liable for their supervisors under respondeat superior.

54. Plaintiff participated in protected conduct. Defendant retaliated against Plaintiff because of his participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

55. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

56. The wrongful acts and conduct of Defendant was done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

57. Plaintiff suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiff.

58. Plaintiff was terminated as a result of Defendant's discriminatory conduct.

59. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## COUNT II
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq**
*Race Discrimination; Retaliation; Hostile Work Environment*

60. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

61. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under Title VII.

62. Defendant is a covered employer under Title VII and employs more than 15 employees.

63. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges and benefits of Plaintiff's employment with Defendant.

64. Defendant, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of race and national origin.

65. Plaintiff was a member of a protected class and was qualified for the position that Plaintiff held.

66. Defendant's actions altered Plaintiff's work environment.

67. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasonable person in like circumstances.

68. This severe and pervasive environment continued throughout Plaintiff's employment.

69. Defendant is liable for their supervisors under respondeat superior.

70. Plaintiff participated in protected conduct. Defendant retaliated against Plaintiff because of his participation in protected activities. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

71. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

72. The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

73. Plaintiff suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiff.

74. Plaintiff was terminated as a result of Defendant's discriminatory conduct.

75. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**COUNT III**

**Violations of the Americans with Disabilities Act ("ADA"), as Amended, 42 U.S.C. §12101, et seq.**
*Failure to Accommodate a Disability; Intentional Discrimination based on Disability*

76. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

77. Plaintiff suffered from a qualifying health condition under the Americans With Disabilities Act ("ADA") that was initiated and exacerbated by the actions of Defendant.

78. Defendant was at all relevant times an employer with more than 15 employees and subject to the ADA.

79. Plaintiff was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation.

80. Plaintiff informed Defendant's managers/supervisors of his serious medical condition. And he also informed them of the need for medical treatment and/or other accommodations in the form of a brief leave. Plaintiff offered to utilize his accrued sick or vacation time for this leave. Defendant failed to provide reasonable accommodations, as required under the ADA.

81. Defendant failed to participate in the interactive process required by the ADA for determining whether reasonable accommodations were possible.

82. Defendant instead attempted to initiate an FMLA or STD leave on behalf of Plaintiff, over Plaintiff's objections.

83. Defendant then terminated Plaintiff's employment when he was unable to present FMLA related documentation due to the removal of Plaintiff's access to company servers which occurred in January of 2024.

84. Defendant's termination of Plaintiff was discriminatory and was based on his actual and/or perceived disabilities and/or record of impairment.

85. As a direct result of unlawful and discriminatory employment practices in violation of the ADA of which Defendant engaged, Plaintiff sustained permanent and irreparable harm, resulting in termination from employment, which caused loss of earnings and benefits, as well as emotional distress and mental anguish.

## COUNT IV
## PHRA
### *Race and Disability Discrimination; Retaliation*

86. Plaintiff hereby incorporates all allegations contained in the above-mentioned Paragraphs fully as if they were set forth at length.

87. In violation of the Pennsylvania Human Relations Act (43 P.S. § 951 et seq.), Defendant Discriminated against Plaintiff because of his race and disability.

88. The following adverse action(s) are the same as set forth in the above Counts that assert Retaliation and Employment Discrimination under federal law.

89. But for Plaintiff's protected class and protected activity, the above stated adverse actions would not have been taken against him. The adverse actions taken against Plaintiff occurred within a proximate time to the protected activity and/or the pattern for the acts and the adverse action is suggestive of intentional discrimination and/or retaliation.

90. Plaintiff filed a charge of discrimination, based on race and disability discrimination and retaliation with the EEOC and PHRC. The charge was cross-filed and asserted a violation of the ADA, Title VII, and the Pennsylvania Humans Relations Act.

91. Plaintiff has exhausted all administrative remedies and is entitled to file suit in the appropriate court under Pennsylvania Human Relations Act 43 P.S. § 951 et seq. for disability Discrimination and Retaliation.

92. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages.

**COUNT V**
**FMLA Violations**
*Interference and Retaliation*

93. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

94. The FMLA prohibits discrimination or retaliation against an employee for exercising her FMLA rights or for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(1).

95. The FMLA prohibits employers from interfering with employees obtaining FMLA leave.

96. The actions of Defendant, in retaliating against Plaintiff for exercising her right to utilize FMLA as described herein, constitutes a violation of the FMLA.

97. Defendant's actions were willful, malicious, wanton, in bad faith and in reckless disregard of Plaintiff's rights.

98. As a direct result of the willful, wanton, reckless, careless, and negligent acts of the Defendant, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a) Enjoining and permanently retraining the violations alleged herein;

b) Declaring the acts and practices complained of herein to be in violation of 42 U.S.C § 1981; Title VII; and the ADA;

c) Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

d) Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

e) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

f) Awarding punitive damages to Plaintiff;

g) Awarding Plaintiff such other damages as are appropriate under 42 U.S.C. § 1981; Title VII; the ADA, 42 U.S.C. §12101; the PHRA; and the PFPO;

h) Awarding Plaintiff such other damages as are appropriate under any and all applicable federal laws.

i) Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and

j) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY TRIAL DEMAND

A jury trial is demanded on all triable issues in this case.

Dated: November 20, 2025

*/s/ Ethan P. Underwood*
Ethan P. Underwood, Esq.
Andrew Lacy, Jr., Esq.
**THE LACY EMPLOYMENT LAW FIRM LLC**
3765 Market Street, Suite 200
Philadelphia, PA 19104
(t) 412-301-3908
ethan@employment-labor-law.com

*Counsel for Plaintiff*